And we move to the fifth case this morning, Fellers v. Brennan. Good morning, Your Honors. Michael Smith on behalf of the appellant, Wayne Fellers. I know I'm appearing before the court on what would seem like a small issue, a bucket up and move on, but this incident that we've alleged that was a hostile work environment changed my client's life. On this particular day in February, he's assigned to clean up various washrooms, the women's washrooms and men's washrooms. He's in charge. He's told what to do. He then does everything according to the book, puts out a sign saying this is a restricted area. Then what happens is that there's some female black women who then take offense to what my client's asking them to be leaving the area. Instead, they call him a name that because of his, he had a mental disability. Not that we're challenging or saying anything about that. What we're saying is it affected him. The defendant has said that this is big, burly guy, 330 pounds, 6 foot 4. He shouldn't be offended by any of this or feel that there could be some aggressive nature towards him, but it failed to take into account that this person, by having not the same capacity of feeling that these were... Counsel, that may go to the subjective element of the field standard, but there is an objective element and this was not objectively severe or pervasive. It was a single incident of a very minor nature. I know it seems like minor, but Your Honor... That's the objective test. If it seems minor, it is minor objectively and you lose. Even if subjectively he had a reaction to it as you represent. We also point out, Your Honor, that he did then after that, because he felt it was affecting his terms and condition of employment, went to Bernie Hudson, who was a supervisor over to women, and complained about the treatment and also that it was affecting his ability to get his work done. Instead of that supervisor taking action, he dismisses it like, file a complaint. And now my client has to go back into the same working conditions where he was still continually being harassed. In fact, women then took their clothes off in front of him, which certainly seems like if a man would have done that to a woman, that certainly would have been considered sexual harassment. I really look at what the judge did. He did seem to feel that what was done was wrong, but the incident in of itself was not enough to portray it as sexual or racial harassment. Well, it seems one of the problems is that he was genuinely upset that they walked on his newly cleaned and treated floor. I think that was one... Well, I think all this other stuff may have gone to pass, but that's why he's really angry, and I can understand that. You know, it's this... They just defy it and walk in anyway, and the woman that... I don't know what... I don't think she said anything, the woman that went in there and changed her clothes. That's just the ladies room, and that's what she did. She wasn't used to whatever they're going to be calling that in the future with transgenders and other things, but that was offensive to him. But she shouldn't have been walking in there, and he had the signs up, and I can... I think he's genuinely angry about that. That's just the way I react to what happened. It's a one-day event. And I understand, but that one-day event affected him, and shortly after that he wound up going on disability, and to this day he hasn't returned to work. So it was, for him, a devastating point in his life. I know that this is not one of the big issues that this court always deals with, but it is one that I think should have had an opportunity to have legs and go to a jury to determine if this fact of what was going on was in violation of his rights. Now, if he would have used the N-word to them when they were calling him a white cracker, I think we'd be looking at... would be offensive to those women. Yeah, we do deal with that issue and it goes to a certain level about whether it's something bad but not really damaging. That's why I go back to what really happened here. And he was highly irritated with the work he was doing, with stripping and, what, resealing or doing something. It sounded like kind of a complicated thing. It takes some skill, and they betrayed it by putting footprints into what he just did when he asked them not to do that. And that may have frustrated him more than anything. Now, obviously, if he got to get in here, if he goes in there and say they walked on my floor and I got a claim, I don't think so. It uses the other about the foul language, which they shouldn't have done. I think it was kind of an overhearing. I don't think they were even directing him, talking to him and walking in the other room and calling somebody names. Yeah, look, it's ugly, you know. This is... I don't want to get back on that locker room talk stuff, but that's what happens sometimes. But dropping on his newly fixed floor, you know, that probably took a while. I guess it's not necessarily clear to me what becomes offensive and what is just these are derogatory things, they're going back and forth, that all of a sudden the defendants... it's just shop talk. Well, if this is an everyday thing, and he just got fed up with it, that would be understandable, but that wasn't. It was a one-day event that happened to coincide when he was working hard and cleaning and resurfacing and stripping, you know, whatever the floors in each bathroom. I would just hope that somehow we would look that there can be, without an absolute attack on a person, that somebody could be offended enough that, I know we don't like to use the word politically correct anymore, but at some point I think what this person's saying can actually cause a mental injury like in this particular case it did. Unless there's other questions, I'm... Thank you, counsel. Mr. Lange? Please support, counsel. Your Honors, I want to make it clear what this case is not about right at the outset. It concerns me because it appears that Mr. Smith is trying to argue a disability case, disability discrimination case. This is not a disability discrimination case. It may have been at one time, but he dropped that. He dropped that when we filed a summary judgment motion. What was his disability? We're not sure. That may have been one of the reasons that he dropped it, but the only issue here before the court is whether the district court should be affirmed because there was no... we believe that the district court should be affirmed because there was no evidence that the few alleged incidents of name-calling and other non-physically threatening behavior by both male and female employees on a single day, February 1st, 2014, against complaint of the Postal Service custodian, Mr. Fellers, who happened to be stripping the floors on occupied, in occupied locker rooms against the advice of his supervisors, was sufficiently severe or pervasive to sustain a hostile environment claim under Title VII. And the district court's judgment can also be affirmed because there's no evidence, absolutely no evidence, that Postal Service management was either negligent in discovering or attempting to remedy the alleged harassment. Instead, the only evidence that we have in the record was that the harassment ceased after the Postal Service management investigated Mr. Fellers' harassment claims. Now, there are a couple of misstatements that I want to address specifically regarding Mr. Smith's summary of what happened with the investigation. We have two declarations in the record, one declaration from Bernie Hudson, who was the overall, I think, the plant manager, the shift manager at the time, or the manager of the female postal employees. And we also have a declaration of Mr. Crumbly, who was Mr. Fellers' supervisor. And both of them said that they spoke with Mr. Fellers, they asked him to put his comments in writing, and they also spoke with the alleged harassers and investigated all the claims, asked everyone to put their claims in writing. But it doesn't make any difference because there's nothing in the record here that anything happened after February 1st of 2014. One of the other things that Mr. Smith has argued is that his clients, this may seem like a minor thing, but that his client's life has changed forever because of this. Well, the point is his client is still a Postal Service employee. He still works for the Postal Service. That's in the record, that's clear. He indicates that he may have tried to go for, apply for some type of disability claim or whatever, but the point is the record also states that that didn't happen until August of this year, months and months after this single day of harassment. So nothing has changed. He was a Postal Service employee then, he's still a Postal Service employee. Now there's no authority which settles, which supports Mr. Fellers' challenge to the district court's decision, and he seems to really misunderstand what his burden was in opposing the Postal Service's motion for discovery. Instead, what he's argued on page 12 of his brief is that summary judgment should have been denied in order to give him a chance to, quote, develop the supporting facts. But as this court has held, summary judgment is the put-up or shut-up moment in a case where the respondent has to present all of the evidence in opposition. Discovery is complete and that's all the facts are in, that's all the facts there are. I mean, it's almost as if he thinks that he's appealing the granting of a motion to dismiss and not, as the situation in this case was, a motion for summary judgment. Likewise, what he seems to be arguing is that his, and this goes back to Judge Sykes' observation about subjective as opposed to objective perceptions, that it would be reasonable to conceive the circumstance where his client, Mr. Fellers, would be more sensitive to name-calling. I mean, that misses the point. First of all, there's no evidence of Mr. Fellers' heightened sensitivity. At any rate, the only relevant is whether these alleged three to four actions, which were made both by men and women, were so objectively severe or pervasive as to create a hostile environment. There's no evidence of this. There's simply no evidence of this in this case. And once again, judgment can be also affirmed on a separate ground here, that there's no basis that the management was negligent in responding to the alleged harassment. So unless there are any other questions from the court, we would ask that the district court be affirmed. I just wondered, did you say that he was advised not to be doing this during workday? That's correct. Should have done it after work or something? That's correct. During his deposition, I asked him a series of questions concerning his instructions, and I asked him, he gave me, he testified as to what those instructions were, and I believe the testimony was he was to try to work around the other employees' schedules. Well, this isn't a 24-hour operation then, I assume? It is a 24-hour operation. Okay, so there's always going to be somebody there. Exactly, Your Honor. And they're always going to have to use the bathroom. Yes, Your Honor. There are different shifts that come in and out. It's a large... Charge worker on that, I think. That's correct, that's correct, but I think he still, that's still what his supervisor told him. Thank you. Again, to address what you said, Judge, about the sign. Now, I'm certain from everyday observations, you've been in public buildings where there's a sign put down, washroom closed. They don't want you to slip and fall, that's why they put those up. And a lot of times they will keep you from going in there. I mean, where it's barred, it's closed till they finish cleaning. I'm certain the court has seen it. Yes, there is certain ones that say slip and fall, but there's also other ones that don't want people in because it's going to impede the ability to get their position done, especially when you have a male going into a female washroom to clean up. The other thing I'd like to just point out is that, yes, they may have done an investigation after the fact, but we had a situation where the supervisor, Bernie Hudson, who was told about the impairment to Mr. Feller's working environment, that he needed his assistant. And he could have, Bernie could have, gone into the situation and possibly worked it out with the women to determine what was going on, what's true, what's not true. This is the point of decision-making that can be done without going through rhetoric later on of people having a chance to think about what they're going to say. Here we had the immediate situation where somebody can come in and eliminate the issue which then may not even have been more than my client saying, okay, they apologized or something else and everybody moves on. Instead, we've got an employee who goes back into the situation. Supervisor doesn't listen to him and he's still being subjected to an impairment in his work performance. He's still said he's still working for them. He certainly isn't. I mean, at this point in time, I did see documents from him that they put him, at least the union had notified him, that he was being put on permanent disability, a retirement type. So he isn't working? Excuse me? He isn't working? No. There not be any other questions? Thank you. Thank you, counsel. Thanks to both counsel. The case is taken under advisement.